Domenick L. Gabrielli, J.
In this uncontested action for an annulment, the plaintiff claims that the defendant was guilty of fraud in that she had, prior to the marriage, intentionally and falsely represented that she would have two children and raise a family. The plaintiff further claims that he relied upon this representation and would not have married if he had known of the falsity of the representation; and that during their marriage, the defendant insisted that the plaintiff use contraceptives, with which request the plaintiff complied.
The plaintiff entered the military service on November 6,1958 and while he was on a three-day pass the parties were married at Rochester, New York, on February 21,1959. They had known each other for some time. He further testified that prior to the marriage, he and the defendant had discussed the impending marriage and that the defendant had promised and agreed to have two children.
The plaintiff was discharged from military service in August of 1959 and returned to the home and continued to live with the defendant. He further testified that he learned about her absolute refusal to have children “ around Christmas time ” of 1959; and he then testified as follows: ‘ ‘ Q. And you and you wife lived together how long? A. Until November of ’60.”
The only other witness sworn was the brother-in-law of the defendant, who testified to his understanding of the conversations of the parties to the action, which had taken place prior to and after the marriage, as they related to having children.
This witness further testified as follows:
“ Q. When Mr. Primmer returned from the service in August of 1959, as I understand it, you overheard some conversations where she did not want to have children any more? A. Yes, sir. My sister-in-law — my wife’s sister — stayed with us quite a bit weekends and stuff when he was away, and consequently we knew a lot of their private lives. I mean they were very close to us out there.
“ Q. Tell me, from the conversations that you had during all this time and before and after he returned from the service, do you think that this decision on her part not to have children was something she made after they were married or before they were married? A. I honestly believe that it came after they had been married, that she definitely — something changed her mind. *591 That I can’t tell yon what, because I don’t know. But I definitely would say it was changed after the marriage.”
This is clear and convincing proof that any claimed intent was not present prior to the marriage.
In any event, acquiescence in the use of contraceptives for over a year after his return from service constituted a waiver by the plaintiff of the defendant’s alleged fraud in representing before the marriage that she wanted to have two children.
There is, in addition, a statutory requirement inherent in the cause of action that there be no condonation of the alleged fraud by voluntary cohabitation after discovery of the facts. (Civ. Prac. Act, § 1139; Aghnides v. Aghnides, 308 N. Y. 530.) Here he states he knew of the alleged fraud in December of 1959 and continued to live with the defendant until November of 1960.
Under the statutes and under the case law enunciated by our courts, it has long been the rule that no annulment ought be granted for refusal to have children unless the conscience of the court is satisfied from the testimony that there was in fact a premarital fraudulent intent not to have children; that the other party to the marriage would have refused to enter the marriage if aware of that intent; and that the defrauded party ceased cohabitation immediately after becoming aware of it.
Here, if there were any such premarital fraudulent intention on the part of the defendant not to procreate, the court is convinced that this plaintiff would have become aware of it early upon his return; and his acquiescence for the lengthy period of time in question, amounted to a condonation.
Plaintiff’s cohabitation with the defendant after he was made aware of the defendant’s refusal to enter into a religious ceremony displays acquiescence on his part and constitutes a waiver of this alleged fraud (Dodge v. Dodge, 64 N. Y. S. 2d 264). “ In a marriage, as in an ordinary contract, a fraud may be waived, and one who continues, after knowledge of the fraud, to accept the benefits of the contract, may not later be heard to ask for a rescission.” (Bentz v. Bentz, 188 Misc. 86. To the same effect, see McGill v. McGill, 179 App. Div. 343, affd. 226 N. Y. 673; Schulman v. Schulman, 257 App. Div. 1002; Taylor v. Taylor, 181 Misc. 306; Kurrus v. Kurrus, 136 N. Y. S. 2d 395.)
In the final analysis, no fraudulent and false representation has been proved. It clearly appears from the testimony of the only witness, other than the plaintiff, that the defendant’s intention not to procreate originated sometime after the marriage.
We are here dealing with a contract of marriage which is a very solemn relationship and which has been and still is regarded by *592 our present-day civilization as being sacred. This relationship is not one that may be lightly dissolved. It is the basis of the family, and its dissolution, as well as its formation, is a matter of public policy, in which the body of the community is deeply interested (Schumer v. Schumer, 205 Misc. 235).
For the foregoing reasons the annulment is denied and the complaint is dismissed.